IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| KATHY A. RISER,<br><br>     Plaintiff,<br><br>v.<br><br>QEP ENERGY COMPANY,<br><br>     Defendant. | **MEMORANDUM DECISION<br>AND ORDER**<br><br>Case No. 2:12CV133DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendant QEP Energy Company's Motion for Summary Judgment. On December 18, 2013, the court held a hearing on the motion. At the hearing, Plaintiff was represented by Andrew W. Stavros, and Defendant was represented by Richard M. Hymas and Melinda L. Hill. The court took the motion under advisement. Having fully considered the motion, memoranda, affidavits, and exhibits submitted by the parties and the law and facts relevant to the motion, the court enters the following Memorandum Decision and Order.

## BACKGROUND

This case is an employment dispute in which Plaintiff Kathy Riser alleges claims against her former employer, QEP Energy Company, for violations of the Equal Pay Act ("EPA"), Title VII of the Civil Rights Act, and the Age Discrimination in Employment Act ("ADEA") based on alleged pay disparities, failure to promote, and discriminatory discharge.

Riser began employment with Questar Exploration and Production Company ("Questar

E&P") in 2003, as an Administrative Services Representative II.  In that position, Riser was assigned a wide variety of tasks, including management of the company's fleet of vehicles, various facilities management duties, and managing construction projects at the company's field offices.  On July 1, 2010, Questar E&P was spun off from Questar Corporation and became an independent company known as QEP Energy Company ("QEP").  Riser was employed by QEP from July 1, 2010, to September 8, 2011.

QEP claims that, in approximately September 2010, it began receiving complaints regarding Riser's job performance with respect to her fleet duties and construction management duties.  The complaints were not passed on to Riser.  However, in the spring of 2011, Riser's supervisor and his boss discussed the option of discharging Riser for poor performance.  Instead, QEP asserts that it decided to create a new Fleet Administrator position and reassign Riser's fleet duties to the new position.  By reassigning those duties, Riser's supervisors hoped that Riser could better perform her other duties–specifically, her construction management duties.  QEP management agreed, however, that if Riser's performance did not improve after her fleet duties were reassigned, QEP would terminate Riser for poor performance.

QEP created the new Fleet Administrator position in May 2011 and interviewed several applicants.  In June 2011, QEP hired Matthew Chinn.  QEP paid Chinn an annual salary of $62,000.  The salary was within the range established by the HR Department for the position and was the same amount Chinn had been paid by his previous employer.  Chinn assumed the fleet duties that Riser had performed as well as additional fleet-related duties.

QEP claims that it continued to have performance issues with Riser, particularly with respect to her construction management duties.  Although Riser was aware of issues relating to one construction management project, she was not given any specific warnings by her

2

supervisors.  In August 2011, QEP terminated Riser.  QEP contends the termination was based on complaints with respect to Riser's performance in connection with construction management of a construction project in North Dakota.

QEP management then created a new Denver-based Facilities Manager position.  QEP management determined the duties for the new position, and the HR Department determined the salary range.  The position was posted and QEP interviewed several candidates.  QEP hired Jason Bryant, who had been a project manager for a company that was doing the remodeling work for QEP's Denver offices.  QEP management, therefore, knew Bryant and had been discussing the new position with him prior to creating the position.

The construction management duties that Riser had been assigned to perform prior to her termination were reassigned to the new Facilities Manager.  Those duties, however, constituted only a portion of the duties assigned to the new position.  The new Facilities Manager had a supervisory position and dealt with projects at the Denver main office as well as field offices.

## DISCUSSION

### Defendant's Motion For Summary Judgment

QEP moves for summary judgment on all three of Riser's claims asserted under the EPA, Title VII, and the ADEA.  Riser opposes the motions, arguing that there is sufficient evidence for the causes of action to be presented to a jury.

## I.  EPA

### A.  Prima Facie Case

To establish a prima facie case of pay discrimination under the EPA, Riser "has the burden of proving that (1) she was performing work which was substantially equal to that of male employees considering the skills, duties, supervision, effort, and responsibilities of the jobs; (2)

the conditions where the work was performed were basically the same; [and] (3) the male employees were paid more under such circumstances." *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1363 (10th Cir. 1997).

QEP argues that Riser cannot establish a prima facie case of pay discrimination under the EPA and, even if she can, QEP can prove that the pay disparity was based on a factor other than gender.  The first element of a prima facie case, requires Riser to demonstrate that her job was substantially equal to Chinn's or Bryant's "considering the skills, duties, supervision, effort, and responsibilities" of the jobs.  *Sprague*, 129 F.3d at 1363.   Jobs need not be identical, only substantially equal.  29 C.F.R. § 1620.  To show substantial equality of work, Riser must submit proof that the jobs being compared require equal skill, effort, and responsibility.  29 U.S.C. § 206(d)(1).

QEP admits that the fleet duties Riser performed before the Fleet Administrator position was created became part of Chinn's job duties once he was hired as Fleet Administrator. However, Chinn performed Riser's former duties and several other fleet-related duties.  Chinn developed a natural gas vehicle program and centralized the maintenance functions of the fleets. Although some of her duties were transferred to Chinn, Riser has not demonstrated that her position required the same skill, effort, and responsibility as Chinn's newly-created Fleet Administrator position.  Therefore, the court cannot conclude that Riser's and Chinn's jobs were substantially equal for EPA purposes.

With respect to the Riser's and Bryant's jobs, QEP admits that some of Riser's construction management duties were transferred to Bryant.  However, again, QEP lists several other duties assigned to Bryant that were not apart of Riser's job.  Bryant became responsible for managing all of the construction projects in the Denver office and managing the facilities at the

4

Denver office and field offices.  Bryant also had maintenance and security duties that Riser did not have.  In addition, Bryant supervised several employees while Riser had no supervisory responsibilities.  While there is a single overlap in job duties, the bulk of Bryant's job duties were not things Riser was assigned to perform.  These significant differences in job duties make their jobs too dissimilar for purposes of finding substantial equality under the EPA.

**B.  QEP's Affirmative Defense**

Even if Riser were able to establish a prima facie case of pay discrimination, the burden would shift to QEP to demonstrate that the wage disparity was justified by one of the four exceptions provided for in the EPA.  If the employee establishes a prima facie case, the employer must prove by a preponderance of the evidence the existence of one of the EPA's four permissible reasons for a wage disparity: (1) a seniority system; (2) a merit system; (3) a pay system based on quantity or quality of output; and (4) a disparity based on any factor other than gender.  *Tidwell v. Fort Howard Corp.*, 989 F.2d 406, 409 (10th Cir. 1993).  If the employer meets its burden of demonstrating that the pay disparity is caused by one of the four statutorily permissible reasons, the employee must rebut the explanation by "showing with affirmative evidence that it is pretextual or offered as a post-event justification for a gender-based differential."  *Little v. Cobb County*, 2006 WL 839401, *6 (N.D. Ga. 2006).

QEP has demonstrated that the grade and salary range for Chinn's and Bryant's positions were established by QEP's Human Resources Department pursuant to a gender neutral pay classification system prior to even knowing whether a man or woman would be selected for the position.  The Human Resources Department examined the job duties and surveyed similar jobs in the industry to determine the correct range of compensation.  The compensation QEP then agreed to pay Chinn and Bryant were within those pre-established ranges.  This system

demonstrates that QEP used a system that did not take gender into account.  Riser has presented

no evidence to rebut the gender neutral basis of QEP's system.  Moreover, Chinn was paid an

amount within the set range for the position that coincided with the same pay he was receiving at

the job he was leaving.  *Brickey v. Employers Reassurance Corp.*, 293 F. Supp. 2d 1227, 1233

(D. Kan. 2003) (a person's "experience, market value, management potential, and former salary

are 'factors other than sex.'")  And, Bryant was paid more than QEP originally offered him

because he refused the first offer and negotiated a higher salary.  *Clayton v. Vanguard Car*

*Rental*, 761 F. Supp. 2d 1210 (D.N.M. 2010) (wage disparity resulting from negotiations for

higher pay was "based on a factor other than sex").  Therefore, the court concludes that QEP has

demonstrated that the pay disparity was not based on gender.  Accordingly, the court grants

QEP's motion for summary judgment on Riser's EPA claim.

## II.  Title VII & ADEA

Riser also asserts causes of action against QEP for gender discrimination under Title VII

and age discrimination under the ADEA based on pay discrimination, discriminatory failure to

promote, and discriminatory discharge.

### A.  Pay Discrimination

To establish a prima facie case for pay discrimination under Title VII, a female employee

must show that she "occupies a job similar to that of higher paid males."  *Sprague*, 129 F.3d at

1363.  To prove a prima facie case of pay discrimination under the ADEA, the employee must

"show a discriminatory pay disparity between [herself] and similarly situated but younger

employees."  *Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1181 (10th Cir. 2011).  Based

on the court's analysis above with respect to the EPA, Riser has not demonstrated that she

occupied "a job similar" to higher paid males or that there was a discriminatory pay disparity

between herself and "similarly situated" younger employees.

Even if Riser could establish a prima facie case of discriminatory pay under either statute, she has presented no evidence that QEP's proffered reasons for its actions were pretexts for gender or age discrimination.  There is no evidence that QEP instituted a new compensation system or set grade levels to discriminate based on age or gender.  QEP set the ranges for the new positions before the new positions were filled.  Accordingly, QEP is entitled to summary judgment on Riser's pay discrimination claims under Title VII and the ADEA.

### B.  Failure to Promote/Discriminatory Discharge

Riser also alleges that she was discriminated against in violation of Title VII and the ADEA based on her sex and her age when QEP failed to promote her and when QEP terminated her employment.  Both parties agree that the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to both the ADEA and Title VII claims. *See id.* at 802-05; *Riggs v. Air Tran Airways, Inc.*, 497 F.3d 1108, 1118 (10th Cir. 2007).

### 1.  Failure to Promote

Riser claims that in not being promoted to the new Denver-based Facilities Manager position that was filled following her termination, QEP discriminated against her on the basis of gender and age.  To establish a prima facie case of discriminatory failure to promote based on gender or age under Title VII, Riser must show that (1) she is a member of a protected class; (2) she applied for and was qualified for the position; (3) despite being qualified she was rejected; and (4) after she was rejected, the position was filled.  *See Jones v. Barnhart*, 349 F.3d 1260, 1266 (10th Cir. 2003).  To establish a prima facie case of discriminatory failure to promote under the ADEA, Riser must show that (1) she was within the protected age group at the time of the failure to promote, (2) she was qualified for the promotion, (3) she was not promoted, and (4) she

7

was passed over for an available promotion in favor of someone younger. *Furr v. AT&T Technologies, Inc.*, 824 F.2d 1537, 1542 (10th Cir. 1987).

It is undisputed that Riser did not apply for the Facilities Manager position. Nor could she have applied for or been promoted to that position because it was not created until after her employment with QEP ended. Riser argues that QEP had been discussing the position with Bryant before she was terminated. However, the position was not official at that time and Riser did not apply for the position. Application for the position is a required element of a prima facie case under Title VII. Under the ADEA, Riser was not "passed over for an available promotion" because she was terminated prior to the creation of the position. Under the facts of this case, the position cannot be considered to be an "available promotion." Riser, therefore, cannot establish a prima facie case under either statute.

Even if the court were to conclude that Riser has established a prima facie case under these statutes, she has not rebutted QEP's legitimate, non-discriminatory reasons for its actions. QEP explained that Riser was not promoted to the position because she was terminated before it was created, she did not apply for the position, she did not have the skills QEP wanted in the position, and she would not have been considered for the position based on her unsatisfactory performance on the North Dakota project. Even if Riser had applied for the position, QEP asserts that it would have considered her unqualified because it was looking for someone with experience as a contractor. Riser has presented no evidence that QEP's desire for someone with contracting experience is a pretext for discrimination. Riser asserts that the timing and manner of hiring Bryant shows a pretext for discrimination. However, the sequence of events raises no inference of discrimination against her. At most it shows that the company was considering a better or more efficient way to manage its facilities and construction projects. The court

concludes that Riser has presented no evidence demonstrating age or gender discrimination in connection with QEP's failure to promote Riser, an employee who had been terminated prior to the creation of the position.  Accordingly, the court grants QEP's motion for summary judgment on Riser's failure to promote claims.

## 2. Discriminatory Discharge

Riser also alleges that QEP terminated her employment as a result of gender and age discrimination in violation of Title VII and the ADEA, respectively.  To establish a prima facie case of discriminatory discharge under Title VII, Riser must show (1) that she belongs to a protected class; (2) she was qualified for her position; (3) she was discharged; and (4) her position was not eliminated after her discharge.  *See Adamson v. Multi Community Diversified Servs., Inc.*, 514 F.3d 1136, 1150-51 (10th Cir. 2008).  To establish a prima facie case of discriminatory discharge under the ADEA, Riser must show that (1) she is over 40 years old; (2) she was performing satisfactory work; (3) she was terminated from employment; and (4) she was replaced by a younger employee.  *Id.*

The undisputed evidence establishes that Riser was not replaced and her position was not filled by a male or younger employee.  Riser's position was eliminated following her termination. QEP created the Facilities Manager position, a much different job than the job Riser held. Bryant, who was hired as the Facilities Manager, did not assume Riser's position.  He assumed some of her duties.  However, some of her other duties were assigned to other employees as well. Therefore, Riser has not demonstrated a prima facie case of discriminatory discharge under either statute.

Even if Riser could establish a prima facie case of discriminatory discharge under either statute, she has presented no evidence that QEP's proffered reasons for its actions were pretexts

for gender or age discrimination. She asserts that she was not ever reprimanded for unsatisfactory performance. However, there is no requirement that an employee be reprimanded prior to termination. The Tenth Circuit has stated that "the mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent or that the substantive reasons given by the employer for its employment decision were pretextual." *Randle v. City of Aurora*, 69 F.3d 441, 454 (10th Cir. 1995). A deviation from established procedures "goes only to process and not to purpose or motivation." *Ingels v. Thiokol Corp.*, 42 F.3d 616, 623 (10th Cir. 1994).

Moreover, Riser presents no evidence that would suggest that QEP discharged her based on her age or gender. Even if she could demonstrate that any of QEP's proffered reasons were false, there must be some inference of a discriminatory motive. "[W]here the evidence of pretext supports only nondiscriminatory motives, such an inference is logically precluded and summary judgment for the employer is appropriate." *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1168 (10th Cir. 2007). In this case, there is no evidence to support an inference of discriminatory motive. Accordingly, the court grants QEP's motion for summary judgment on Riser's discriminatory discharge claims.

## CONCLUSION

Based on the above reasoning, Defendant QEP's Motion for Summary Judgment is GRANTED. Because this ruling disposes of all of Plaintiff's claims, the Clerk of Court is directed to enter judgment for Defendant and the close the case. Due to the particular circumstances presented by the case, the court finds that each party shall bear her and its own fees and costs. Although QEP has prevailed on summary judgment, the court finds that Riser's case was not frivolous, unreasonable, or without foundation. *Christiansburg Garment Co. v.*

*EEOC*, 434 U.S. 412, 421-22 (1978).

DATED this 22nd day of January, 2014.

BY THE COURT:

DALE A. KIMBALL
United States District Judge